Our second case for this morning is United States v. Rodolfo Hernandez Flores. My name is Thomas Gable. I'm an assistant federal public defender for the Southern District of Illinois. The question before the court today is whether or not the district court erred in denying the appellant's motion to suppress involving a traffic stop where the partial obstruction of two letters in the plate's name on the appellant's license plate by a plate frame did not violate Illinois law and any mistake of fact or law was not reasonable. Your Honor, my client was en route on an interstate that was being followed by Trooper McVicker. The trooper noticed the guy was not speeding, not committing any obvious traffic violations. He notified dispatch that he could not read the license plate, but then he notified dispatch after he got closer to the vehicle he could read the license plate. Doesn't he, in the first notification, he thinks it might be Colorado? That's correct, Your Honor. So he knows it's a C. He knows it's a C, and as he gets closer he can read it's Baja. Before he pulls the car over he figures out it's Baja, California. That's correct, Your Honor. Before he pulls the car over he has read the license plate. And the question becomes, under high... Does he ever say he doesn't know that Baja, California is in Mexico? I don't think he ever claimed that he didn't know it was a Mexican plate, Your Honor, after he read the Baja, California. The question became how was he going to stop the vehicle in his mind. That's my interpretation of what I've read. There's no city named Baja, California, is there? It's a state, right? It's a state of Mexico. Yes, but there's no city in California named Baja. Not that I know about. Good. And from what I understand... This is confusing enough. From what I understand, as he noticed the plate was a Mexican plate, he decided it violated Illinois ordinance about having... Obscuring plates. Obscuring the plates. So is your position just that this frame around the plate is more or less equivalent to the kind of frame you get from your car dealership where it says Joe's Autos across the top or whatever? That's exactly our position, Your Honor. What we believe is that if the trooper's correct and the government's correct, you can stop any car in Illinois that a dealer license plate frame on it because it could be obscuring some part of the license. Now, Illinois has a statute that outlaws covers on license plates. But that's a thing across the top of it. That's the actual cover. That's a separate statute. And then it comes into obscuring license plates so you can't have snow built up on the back of your car and obscure your license plate. You have to keep it clean. There are a great deal of people who violate that, I'm going to observe, in the wintertime. I'm sure there are. Driving around on the Illinois roads. But the one case that the government also cited was Coleman where they had a trailer hitch. Well, a trailer hitch can obscure more than a letter, and you may not be able to see it, the full license plate, until after you pull over the car. You know, how much was covered in Coleman? I couldn't tell you. That did not come out of our district, so I do not know. But it has been ruled on before that you cannot obscure your license plate. My thing here is that this was not a reasonable stop, and reasonable becomes very key because of the Supreme Court case in High End. And if it's not a reasonable stop, then it should be suppressed. So how does that mean? We have some discussion in this case about how High End fits in, because obviously it kind of intervenes in the middle while this case is going on. So you're now arguing it wasn't a reasonable mistake of law or a reasonable mistake of fact, right? Yes, Your Honor. This becomes the trooper was unreasonable in his interpretation. If the trooper is reasonable in his interpretation, it's a good stop. Right. You concede that High End would apply. The question then is, is it an unreasonable stop? And because you have to read the statute so broadly to make it reasonable, it's unreasonable. Sounds a little tautological, but that's all right. I think we know what you're saying. So what needs to be seen? I mean, you know, you're really coming at this from the perspective, I would say a functional perspective, that by the time the trooper knows the issuing jurisdiction here at Baja California and the number, and he never argues that he doesn't know that it's AKV 4611, so that's plain, the grapes or whatever they are in the corner. That's enough, you say. You don't have to worry about some little registration sticker that might be covered by the frame or anything else. Your Honor, if you take it to absurdity, even putting on a registration sticker would be obscuring the license plate. Right, but we can assume that reconciling two state laws, that that would not, in fact, be prohibited. That's correct. And when we look at it, Your Honor, the trooper says he couldn't see if it was Colorado or what initially, but when he gets up behind it, he can read it. At distance, most of us cannot read a license plate. We have to get pretty close before we can read it. Oh, yeah, it's not that clear if it's Ohio or Minnesota or Illinois. I mean, a lot of license plates do look similar even within the 50 states. Yeah, and so we believe that the case should be sent back down with instructions to the district court to hopefully honor our motion to suppress. I'm going to conclude this. Because this whole case hinges on whether that first stop is okay. Everything else you're considering goes by the book. Yes, Your Honor. Well, you don't make any preface on the fact that this might have been because of the way he saw he was driving, sort of hunched up and gripping the steering wheel and going slower and stuff. So you're not saying this is just a phony stop? You're not making that allegation? Because do you know at what point they called the other or did he call the other officer or he just happened to be going by with his dog? Well, what happened, Your Honor, was after he saw the license plate and made the stop, he contacted the driver, found out that he spoke Spanish, called for a Spanish-speaking trooper at the same time he called for a dog, and the Spanish-speaking trooper and the dog got there about the same time, within two minutes of each other. The dog didn't speak Spanish, I take it? No, not that I know about. But could have came close to it, as close as I can. But the real issue, Your Honor, is that he had to find a reason to stop the guy. He was doing everything right. He was going underneath the speed limit. He was staying in his lane. He wasn't making any radical lane changes. Well, there's no doubt that his stated reason for stopping the car is the license plate, alleged license plate violation. In the report. He doesn't claim anything else. He doesn't mention the things about going under the speed limit or looking. I mean, some people are nervous drivers, right? So driving while nervous. Yeah. But there's none of the typical radical changes of lanes or any of that. The usual stuff that they use. The only reason that he said that the man looked tense while he was driving, I don't know how you can tell that when you're behind somebody. Maybe he was tense. When a state trooper follows me, I'm tense. Okay. Well, if you want to save a second for rebuttal, you can do that now. Yes, ma'am. Thank you. Mr. Clark. Good morning, Your Honor. Actually, the officer saw that the defendant was traveling well under the speed limit. He applied the brakes and made a lane change for no apparent reason, according to the police report that is reproduced. But that's not why he stopped it, wasn't it? No. He doesn't allege an illegal lane change. You're correct. It was not. So he stops it because of this license plate. That is absolutely correct. And he already knows it's Baja, California. You suggest he changed lanes without any reason? Do you have to notify people what your reason is for changing lanes? The officer observed that he seemed to be changing lanes without any particular reason. I observe that a lot. Only once, though. He doesn't say he does it repeatedly. As he passed McVicker, Hernandez-Flores changed lanes for, quote, no apparent reason. Right. And let me get back to the point that these are not the reasons, but he stopped. But this license plate, he knows it's Baja, California. There's no doubt about the California part. Maybe you need to know a little bit to realize that this says Baja and not Daya or something. Or Oaxaca. But he knows that it's California. He knows it's Baja, California. He knows it's Mexico. He may not know everything about the United Mexican States, but he knows that this is a Mexican license plate, which suggests to me it's visible enough to read. Okay. Well, let's go back just a second, and I'd like to just reemphasize that the reasons or the matters that I mentioned before were matters that lead up to this observation of the license plate. They were not reasons for his pulling the car over. Right. I know, so they don't really help you in my opinion. I'm sorry. So with respect to the license plate itself, I don't think that he's necessarily made a conclusion about Baja, California. What he says specifically is that it appeared to read Baja, California. Which is from Mexico, he adds. Correct. So then he says, which seems ridiculous to me, that the framing bracket may have been covering another state or region above Baja, California. I'm not sure what that refers to either, Your Honor. Ridiculous. People have license plates like this that say Chicago Blackhawks across the top of them, or University of Notre Dame, or University of Chicago even. So your position would be to outlaw license frames, I think. Well, I don't know that it does. I'm telling you, it outlaws most of them. I spend an inordinate amount of time driving around Chicago because traffic is heavy, and a lot of people have license plates, frames that look like this. I don't dispute that there are frames that cover parts of license plates. This particular license plate, or rather frame, covers part of the original. The top part of the B and the top part of the C. Correct. And we've agreed that the C isn't a problem. We agree that the C is not a problem. So it's just the Baja, and he figures it out by the time he gets there. Well, he doesn't conclude that. He says it appears that. So what's wrong with that? Nothing is wrong with that. He wants to stop the guy to make sure that that's what it is. Oh, I don't think so. He doesn't go right around to the license plate and unscrew it. He's not interested in the license plate. By that time, he is able to confirm, and he does go up to the driver and determines that he is coming from Baja, California. But that's not what he says. He thinks that there's an improper display of license plate due to it covering a portion of Baja, California, and whatever may be above it that was unknown. But that seems to me ridiculous, actually. He can read the state, and he can read the number. I don't believe that he pulled him over. And there's a registration certificate on the bottom. I see that. 2014. Right. But I don't believe that the only reason that he pulled the guy over was because of the top portion that obscured. That's what he says, though. You're stuck with his facts. I understand that that is part of it, but I think that the primary thrust of what he's saying is that it was covering up part of Baja. But here's the point. You could have a license that covers up part of the I of Illinois, too. It kind of chops off the top part of the I and the double L, and any trooper would know that it says Illinois. Well, and you may very well be right. According to you, because it chops off the top of the I and the double L, any trooper could also stop a person with a frame that did that. Well, I think that here. Right? Those are all good stops. If you're talking about just the I, I don't think that it would be material. Why not? Because you could tell from the lower part of the I that it was an I, just like you have in California. Well, you don't know if it's a T. Maybe it's Tillinois. I don't know. Well, the point is, Your Honor, that he did pull him over. We, I don't think, can expect the officer to know all plates from all countries. I don't expect him to know that. And if it had been some weird thing and he really couldn't read it, I think we'd have a different case for sure. But the words out of his mouth make it pretty clear that he can read it. That's why. Well, I think that one problem here is that there was no hearing on this matter, to make points more clear, like you were talking about. But what he says is that it appeared to be from Baja, not that it was from Baja. And that's why he pulled him over. It was unclear, and the frame made it unclear. And the statute very clearly says that the plate must be maintained in a condition to be clearly legible, free from any materials that would obstruct the visibility of the plate. We're not talking here about a plate that is from Illinois that has an I covered. We're talking about a foreign country, a foreign state, where the B is partially covered so that it looks like it's Oia, California, rather than Baja, California. So we don't expect these officers to be lawyers. We don't expect them to be legislators. I understand that, and as I say, if it were some other place, maybe he doesn't know there's a state called Veracruz in Mexico, and you can't read that either. If he had not identified it, I think the facts would be quite different here. It's just that he does identify it. But he doesn't identify it with clarity. He does not state that he absolutely knows it. Well, he uses this word clearly. He says it appears to be. I'm not sure that means he's all that much in doubt. Well, it suggests to me that he does have some doubt. He knows it doesn't say Wyoming. It seems to me that he's pulling him over because he wants to confirm that it was Baja or not. Look, when he stopped, he determined at some point pretty quickly that the driver didn't speak English. Correct. So he gets back up for someone who speaks Spanish. Correct. And if he had walked back and looked at the license plate carefully, whatever, maybe he does think it deserves a warning. Unlike Judge Wood, I don't drive in Chicago. I take the train over here because I am afraid to drive in Chicago. So I'm from South Bend. But even in South Bend, because of this case, I look more carefully at a car ahead of me that had a bicycle rack on the back of it that was clearly blocking half the license plate. But I think a lot of people won't pay attention to that. So the only reason we're here is because he found five kilograms of, I guess it was heroin, in the car. Correct. And that's the problem. That's why there's a big deal about why he stopped him in the first place. And if you call another officer for an interpretation, that's one thing. But if you call the officer for a dog sniff, that seems to be more than just checking out the license plate. Well, that is true. And I know we're not dealing with that. That's why we're here. But there were other reasons why he called for the dog, and they were the contact that he had. He likes animals. He likes animals, right. No, he mentioned the fact that the driver appeared to be reciting something that he had memorized. There was more activity of a personal nature that led him to believe that the driver was nervous, and that's why. He found all this out after the stop, which there may have been, under other circumstances, other reasons than to go beyond that. That's not what we got here. That is correct. And the only argument from defense is that the stop was a bad initial. Yeah, it's just we're focusing on one thing.  And so, Your Honors, I would suggest that the stop was reasonable under the circumstances and that the decision of the district court be affirmed. Okay. Thank you very much. Anything further, Mr. Cable? Your Honor, I've been taught not to mess up a good thing, so barring any questions from the court, I'm finished. All right. Thank you very much. We will take this case under advisement.